**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| MARY L. GARLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:22CV75 |
| | ) | |
| KILOLO KIJAKAZI, | ) | |
| Acting Commissioner of Social | ) | |
| Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff, Mary L. Garland, brought this action pursuant to the Social Security Act (the "Act") to obtain judicial review of a final decision of Defendant, the Acting Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits ("DIB"). (Docket Entry 2.) Defendant has filed the certified administrative record (Docket Entry 8 (cited herein as "Tr. __")), and both parties have moved for judgment (Docket Entries 13, 17; see also Docket Entry 14 (Plaintiff's Memorandum); Docket Entry 18 (Defendant's Memorandum); Docket Entry 19 (Plaintiff's Reply)). For the reasons that follow, the Court should remand this matter for further administrative proceedings.

**I. PROCEDURAL HISTORY**

Plaintiff applied for DIB (Tr. 213-14), alleging a disability onset date of January 27, 2018 (see Tr. 213). Upon denial of that

application initially (Tr. 62-75, 111-19) and on reconsideration (Tr. 76-104, 121-28), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 129-30). Plaintiff, her attorney, and a vocational expert ("VE") attended the hearing. (Tr. 35-57.) The ALJ subsequently ruled that Plaintiff did not qualify as disabled under the Act. (Tr. 15-29.) The Appeals Council thereafter denied Plaintiff's request for review (Tr. 1-6, 188-92, 313-15), thereby making the ALJ's ruling the Commissioner's final decision for purposes of judicial review.

In rendering that decision, the ALJ made the following findings later adopted by the Commissioner:

1. [Plaintiff] meets the insured status requirements of the . . . Act through March 31, 2023.

2. [Plaintiff] has not engaged in substantial gainful activity since January 27, 2018, the alleged onset date.

. . .

3. [Plaintiff] has the following severe impairments: obesity; degenerative joint disease of the right shoulder; and cervical strain.

. . .

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

. . .

5. . . . [Plaintiff] has the residual functional capacity to perform light work . . . that is limited to occasional reaching or lifting to shoulder level with the right dominant hand; occasional climbing of stairs,

2

stooping, kneeling, crouching, and crawling; and no
exposure to hazards such as unprotected heights or moving
machinery.

. . .

6.   [Plaintiff] is capable of performing past relevant
work as a customer service representative.  This work
does not require the performance of work-related
activities precluded by [Plaintiff]'s residual functional
capacity.

. . .

7.   [Plaintiff] has not been under a disability, as
defined in the . . . Act, from January 27, 2018, through
the date of this decision.

(Tr. 20-28 (bold font and internal parenthetical citations

omitted).)

## II.  DISCUSSION

Federal law "authorizes judicial review of the Social Security

Commissioner's denial of social security benefits."  Hines v.

Barnhart, 453 F.3d 559, 561 (4th Cir. 2006).  However, "the scope

of . . . review of [such a] decision . . . is extremely limited."

Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981).  Even given

those limitations, the Court should remand this case for further

administrative proceedings.

### A.  Standard of Review

"[C]ourts are not to try [a Social Security] case de novo."

Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).  Instead, "a

reviewing court must uphold the factual findings of the ALJ

3

[underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal brackets and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the [C]ourt should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Social Security Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Social Security Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the Court], therefore, is not whether [the claimant] is disabled,

4

but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

When confronting that issue, the Court must take note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and that, in this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months,'" id. (quoting 42 U.S.C. § 423(d)(1)(A)).[1] "To regularize the adjudicative process, the Social Security Administration [('SSA')] has . . . promulgated . . . detailed regulations incorporating longstanding medical-vocational evaluation policies that take into account a claimant's age, education, and work experience in addition to [the claimant's] medical condition." Id. "These regulations establish a 'sequential evaluation process' to

---

[1] The Act "comprises two disability benefits programs. [DIB] . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

5

determine whether a claimant is disabled." Id. (internal citations omitted).

This sequential evaluation process ("SEP") has up to five steps: "The claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity [('RFC')] to (4) perform [the claimant's] past work or (5) any other work." Albright v. Commissioner of Soc. Sec. Admin., 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] A finding adverse to the claimant at any of several points in the SEP forecloses an award and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first three steps, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment

---

[2] "Through the fourth step, the burden of production and proof is on the claimant. If the claimant reaches step five, the burden shifts to the [government] . . . ." Hunter, 993 F.2d at 35 (internal citations omitted).

6

is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's [RFC]." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, whereupon the ALJ must decide "whether the claimant is able to perform other work considering both [the RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.[4]

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

[4] A claimant thus can qualify as disabled via two paths through the SEP. The first path requires resolution of the questions at steps one, two, and three in the claimant's favor, whereas, on the second path, the claimant must prevail at steps one, two, four, and five. Some short-hand judicial characterizations of the SEP appear to gloss over the fact that an adverse finding against a claimant on step three does not terminate the analysis. See, e.g., Hunter, 993 F.2d at 35 ("If the ALJ finds that a claimant has not satisfied any step of the process, review does not proceed to the next step.").

## B.  Assignments of Error

Plaintiff asserts that the Court should overturn the ALJ's finding of no disability on these grounds:

1) "[t]he ALJ's failure to identify and resolve the apparent conflict between the VE's testimony and the [<u>Dictionary of Occupational Titles</u> ('<u>DOT</u>')] is error that prevents the ALJ's Step 4 denial of benefits from being supported by substantial evidence" (Docket Entry 14 at 5 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 19 at 1-8); and

2) "[r]emand is appropriate for further consideration [by the ALJ] of the medical opinion evidence from [Plaintiff]'s orthopedic specialists" (Docket Entry 14 at 9 (bold font and single-spacing omitted)).

Defendant contends otherwise and seeks affirmance of the ALJ's decision.  (<u>See</u> Docket Entry 18 at 4-15.)

### 1. Conflict Between VE's Testimony and <u>DOT</u>

In Plaintiff's first issue on review, she maintains that "[t]he ALJ's failure to identify and resolve the apparent conflict between the VE's testimony and the [<u>DOT</u>] is error that prevents the ALJ's Step 4 denial of benefits from being supported by substantial evidence."  (Docket Entry 14 at 5 (bold font and single-spacing omitted); <u>see also</u> Docket Entry 19 at 1-8.)  More specifically, Plaintiff argues that "an apparent and unresolved conflict" existed

8

between the VE's testimony that an individual (such as Plaintiff) limited to "'occasional reaching or lifting to shoulder level with the right dominant hand'" could perform Plaintiff's past relevant work ("PRW") as a customer service representative (id. (italics changed to underscoring) (quoting Tr. 22, and referencing Tr. 55-56)), and the DOT's characterization of that job as requiring frequent reaching (see id. at 5-6; see also DOT, No. 249.362-026 ("Order Clerk"), 1991 WL 672320 (G.P.O. 4th ed. rev. 1991) ("Reaching: Frequently - Exists from 1/3 to 2/3 of the time")).[5] Plaintiff asserts that the United States Court of Appeals for the Fourth Circuit has held that Social Security Ruling 00-4p, Policy Interpretation Ruling: Titles II and XVI: Use of Vocational Expert and Vocational Specialist Evidence, and Other Reliable Occupational Information in Disability Decisions, 2000 WL 1898704 (Dec. 4, 2000) ("SSR 00-4p"), "place[s] an 'affirmative duty' on the ALJ to independently identify apparent conflicts between the DOT and a VE's testimony regarding jobs a claimant may perform based on a hypothetical [question]" (Docket Entry 14 at 7 (quoting Pearson v. Colvin, 810 F.3d 204, 209 (4th Cir. 2015))), as well as to "obtain a reasonable explanation [from the VE] for the conflict before [the ALJ] can rely on the VE's testimony to support [the denial]

_____

[5] The VE and the ALJ refer to the "Order Clerk" job in the DOT as "customer service representative." (Tr. 28, 55-56.) For ease of reading, this Recommendation will refer to the job as "customer service representative," the name used by the VE and the ALJ.

decision" (id. (citing Pearson, 810 F.3d at 209-10)). According to Plaintiff, "the ALJ failed to identify this apparent conflict before relying on the VE's testimony at Step 4" (id.), because "the only identified 'inconsistencies' by the VE were the VE's testimony that the [DOT] did not address tolerance for off-task behaviors/time and absenteeism" (id. at 8 (citing Tr. 56-57)). Plaintiff further maintains that the Fourth Circuit in Pearson found that same reaching conflict "apparent" and remanded for the ALJ to resolve it. (Id. at 8-9 (citing Pearson, 810 F.3d at 206, 210-11).) Plaintiff's contentions have merit and warrant remand.

SSR 00-4p places an affirmative duty on an ALJ to elicit an explanation from the VE as to any "apparent unresolved conflict" between the VE's testimony and the DOT:

> Occupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the [DOT]. When there is an apparent unresolved conflict between VE . . . evidence and the [DOT], the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the [ALJ's] duty to fully develop the record, the [ALJ] will inquire, on the record, as to whether or not there is such consistency.

SSR 00-4p, 2000 WL 1898704, at *2 (emphasis added). "[A]n ALJ has not fulfilled his affirmative duty merely because the [VE] responds 'yes' when asked if her testimony is consistent with the [DOT]," Pearson, 810 F.3d at 208 (internal quotation marks omitted); thus, "[t]he ALJ independently must identify . . . where the [VE's]

10

testimony seems to, but does not necessarily, conflict with the [DOT]," id. at 209 (emphasis added); see also id. (rejecting the Commissioner's argument that "apparent" conflict meant only "obvious" one).

In Pearson, "[t]he ALJ found [the claimant's] non-dominant arm could only occasionally reach upward," but for all three jobs cited by the VE, "the [DOT] list[ed] *frequent* reaching as a requirement." Pearson, 810 F.3d at 210 (emphasis in original). The Pearson court further noted that "[t]he [DOT] defines reaching as '[e]xtending hand(s) and arm(s) in any direction.'" Id. (quoting Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles, App'x C ("Physical Demands"), § 8 (U.S. Dep't of Labor 1993) ("SCO")). The court then observed: "Although the [DOT] does not expressly state that the occupations identified by the [VE] require frequent bilateral overhead reaching, the [DOT's] broad definition of 'reaching' means that they certainly *may* require such reaching." Id. at 211 (emphasis in original). The court found the ALJ had failed to identify or resolve the apparent conflict and remanded the case. Id. at 211-12.

Here, the ALJ asked the VE to classify Plaintiff's PRW, and the VE testified that Plaintiff's prior work for Telvista from 2010 to 2012 assisting customers over the telephone with cell phone problems (see Tr. 44) constituted the DOT job "customer service representative," a sedentary and semi-skilled job. (Tr. 55.) The

11

ALJ thereafter queried the VE whether an "individual . . . limited to work at the light exertional level" who, inter alia, "could only occasionally reach or lift to shoulder level with her right dominant hand" (Tr. 55 (emphasis added)) could perform Plaintiff's PRW (Tr. 56). In response, the VE opined that such an individual could not perform Plaintiff's other PRW, but could perform Plaintiff's PRW as a customer service representative. (Id.)

After cross-examination of the VE by Plaintiff's attorney regarding employer tolerance for time off-task and absenteeism, the following exchange occurred between the ALJ and the VE:

> [ALJ:]    Then in the case of those questions, I believe that covers matters not covered in the [DOT]. What do you rely upon for your answers?
>
> [VE:]     Those are my opinions, which are based upon my education, training, and experience, Your Honor.

(Tr. 56-57 (emphasis added).)

The ALJ subsequently adopted the VE's testimony as to Plaintiff's ability to perform the customer service representative job:

> [Plaintiff] has [PRW] as a truck driver; weaver; warehouse checker; customer service representative; machinery assembler; and pizza deliverer. In comparing [Plaintiff]'s [RFC] with the physical and mental demands of the job of customer service representative, the [ALJ] finds that [Plaintiff] is able to perform it as actually and generally performed. This finding is based on [VE] testimony. The [VE] testified that her testimony was consistent with the [DOT] and that, with regard to limitations that are not specifically addressed by the

12

[DOT], her testimony was based on her education, training, and experience.

(Tr. 28 (emphasis added) (internal parenthetical citations omitted).)

A comparison of post-Pearson cases in this Court supports the conclusion that the ALJ here neither sufficiently identified nor resolved the apparent conflict in question. For example, in one case, the Court concluded that the ALJ adequately identified and resolved the apparent conflict:

> The ALJ [] asked the VE whether th[e] three jobs [in question] would remain available if the ALJ altered the hypothetical to reflect no overhead reaching with the left, non-dominant upper extremity, and the VE responded that [all three] jobs would remain appropriate. The ALJ then inquired about the impact that amending the hypothetical to occasional reaching in all directions would have on the available jobs, and the VE eliminated [two] jobs, but testified as follows regarding the Telephone Solicitor job:
>
> > [VE:]    The [T]elephone [S]olicitor . . . per the [DOT] lists occasional for both reaching and handling.  It does not distinguish between . . . whether it's one [extremity], or the other, or bilateral. . . .  But based on professional experience with that occasional, it does . . . [c]ertainly fall within the [DOT] description.
>
> After cross-examination of the VE by [the p]laintiff's representative, the following exchange occurred between the ALJ and the VE:
>
> > [ALJ:]    [I]s your testimony consistent with the [DOT]?

> [VE:]    Yes, Your Honor, and there is no conflict in any of my testimony with the [<u>DOT</u>]. I would just specifically state that for those matters that the [<u>DOT</u>], or the [<u>SCO</u>], its accompanying volume, do not address — those issues would be based on my professional experience. . . . <u>The [DOT] does not make a differentiation between bilateral or unilateral use of limbs or any type of postural movements. . . . Also differentiating the types of reaching whether in any specific direction, it does not deal with that. So in those cases that I just mentioned, those issues with the testimony would be based upon my professional experience, but, again, no conflict with the</u> [<u>DOT</u>].

[T]he ALJ here resolved the apparent conflict between the <u>DOT</u>'s listings for the three jobs in question reflecting frequent and occasional reaching, <u>see</u> <u>DOT</u> No. 249.587-018 ("Document Preparer, Microfilming"), 1991 WL 672349; <u>DOT</u> No. 726.684-110 ("Touch-Up Screener, Printed Circuit Board Assembly"), 1991 WL 679616; <u>DOT</u> No. 299.357-014 ("Telephone Solicitor"), 1991 WL 672624, and the VE's testimony that an individual unable to reach overhead could perform those jobs. As described above, the VE's testimony reflects that he expressly acknowledged that the <u>DOT</u> neither differentiated between unilateral and bilateral reaching, nor specifically addressed the direction of reaching involved and, thus, relied on his own professional experience to opine that an individual who could not reach overhead with the left, non-dominant arm could still perform all three of the jobs in question.

<u>Allen v. Berryhill</u>, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C. May 1, 2018) (unpublished) (internal citations omitted) (emphasis added), <u>recommendation adopted</u>, slip op. (M.D.N.C. May 23, 2018) (Biggs, J.).

14

Conversely, in another case in this district, the ALJ and VE conducted the following exchange:

> [ALJ]:    Has all of your testimony today been consistent with your training, education, and experience?
>
> [VE]:    It has, Your Honor, with somewhat outside [sic] the [DOT] and the companion publications just with the differentiating with the sit and stand as well as the breakdown of reaching right versus left. . . . And that is consistent with my 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry.

Crouse v. Saul, No. 1:18CV269, 2019 WL 4015553, at *4 (M.D.N.C. Aug. 26, 2019) (unpublished) (Peake, M.J.), recommendation adopted, 2019 WL 5783532 (M.D.N.C. Sept. 16, 2019) (unpublished) (Osteen, Jr., J.). Given that exchange, the Court distinguished Allen based on the following rationale:

> . . . [T]he VE did not identify the specific conflict in question. Instead, when queried, the VE stated that her testimony was "somewhat outside the [DOT] and the companion publications just with the differentiating with the sit and stand as well as the breakdown of reaching right versus left." It is far from clear what this means. While the quoted testimony appears to be an effort on the part of the VE to identify some general conflict between her testimony and the [DOT] regarding reaching, such a statement is simply too vague and ambiguous to fairly constitute an identification of the specific apparent conflict raised by Plaintiff here. As a result, the Court cannot determine if the ALJ's step five finding is supported by substantial evidence.
>
> Nor was the VE's explanation for the unidentified reaching conflict susceptible to judicial review. As noted, the VE apparently tried to reconcile the fact that her testimony was "somewhat outside the [DOT]" as to the "breakdown of reaching right versus left," by stating

15

that it was "consistent with [her] 25 plus years of doing [inaudible], talking with employers, doing jobs, being in the industry."  Again, however, it is far from clear what all of this means.  There is no "breakdown" regarding "reaching right versus left" in the VE's testimony or in the ALJ's decision.  While a VE may resort to personal experience to explain why her opinion remains reliable despite an apparent conflict with the [DOT], see, e.g., Allen v. Berryhill, No. 1:17CV277, 2018 WL 2025666, at *6 (M.D.N.C. May 1, 2018) (Auld, M.J.), [recommendation] adopted[,] [s]lip [o]p. (M.D.N.C. May 23, 2018) (Biggs, J.), that explanation must itself be stated clearly enough to be susceptible to judicial review.

Crouse, 2019 WL 4015553, at *5 (some internal citations omitted).

In light of the above-quoted cases, the Court should find that the ALJ here neither sufficiently identified nor resolved the apparent conflict at issue.  The VE's testimony reflects that she believed that the customer service representative job did not require more than occasional reaching to shoulder level with the dominant arm (see Tr. 55); however, unlike in Allen, the VE never specifically acknowledged the apparent conflict between the DOT's description for that job as potentially involving frequent reaching in any direction and with either arm and the hypothetical's restriction to occasional reaching to shoulder level with the dominant (right) arm, stating only that, as to time off-task and absenteeism, those matters were "not addressed by the DOT but were based on [her] education, training and experience" (Tr. 57 (emphasis added)).  Indeed, even in Crouse, where the VE recognized that her testimony remained "somewhat outside the [DOT] and the companion publications just with the differentiating with the . . .

16

breakdown of reaching right versus left," <u>Crouse</u>, 2019 WL 4015553, at *4 (emphasis added), the Court found the VE's testimony insufficient to identify and resolve the apparent conflict, <u>id.</u> at *5.

The Commissioner attempts to characterize the apparent conflict in question as "a misremembering by the VE concerning the [<u>DOT</u>] classification of Plaintiff's [PRW] as a telephone operator" (Docket Entry 18 at 12), offering the following supporting argument:

> Elsewhere in the record, at the state agency, Plaintiff's [PRW] for Telvista between 2010 and 2012 was characterized as a Telephone Solicitor, [<u>DOT</u>] Code 299.357-014 (Tr. 101, 102). Plaintiff described this job as working as a "telephone operator" and helping people over the telephone when they had problems with their cell phones (Tr. 44). The occupation of [T]elephone [S]olicitor occupation [sic] requires only occasional reaching. [<u>DOT</u>] No. 299.357-014 (Telephone Solicitor), 1991 WL 672624. This [C]ourt has previously recognized that the [T]elephone [S]olicitor occupation requires occasional reaching. *Allen*[], [] 2018 WL 2025666, at *6 []. The apparent conflict that Plaintiff asserts that the ALJ should have resolved <u>may have been</u> nothing more than a misremembering by the VE concerning the [<u>DOT</u>] classification of Plaintiff's [PRW] as a telephone operator. In these circumstances, because the evidence supported the ALJ's finding that Plaintiff's RFC permitted her to perform her past sedentary occupation, Plaintiff has not met her burden of showing harmful error.

(Docket Entry 18 at 11-12 (emphasis added).) That argument fails for the simple reason that the ALJ did not, in denying benefits at step four of the SEP, rely <u>in any way</u> on the opinion of Disability Adjudicator/Examiner Gabriel Madrid, <u>issued as part of the state</u>

17

agency determination at the reconsideration level of review, that Plaintiff's prior work for Telvista constituted the DOT job Telephone Solicitor (see Tr. 101-103). (See Tr. 28 (stating that ALJ's step four finding "[wa]s based on [VE testimony]" (emphasis added)).) This Court cannot justify the ALJ's decision based upon post hoc rationalizations by the Commissioner (particularly not such rationalizations which involve the level of speculation employed here). See Anderson v. Colvin, No. 1:10CV671, 2014 WL 1224726, at *1 (M.D.N.C. Mar. 25, 2014) (unpublished) (Osteen, Jr., C.J.) (holding that the Court's "[r]eview of the ALJ's ruling [wa]s limited [ ] by the so-called 'Chenery Doctrine,' which prohibits courts from considering post hoc rationalizations in defense of administrative agency decisions," and noting that "a reviewing court 'must judge the propriety of [agency] action solely by the grounds invoked by the agency[, and i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis'" (quoting Securities & Exch. Comm'n v. Chenery Corp., 332 U.S. 194, 196 (1947))).

In short, the ALJ reversibly erred by failing to identify and resolve the apparent conflict between the VE's testimony and the DOT regarding the reaching requirement of the customer service representative job.

18

## 2. Orthopedists' Medical Opinions

In Plaintiff's second and final assignment of error, she contends that "[r]emand is appropriate for further consideration [by the ALJ] of the medical opinion evidence from [Plaintiff]'s orthopedic specialists." (Docket Entry 14 at 9 (bold font and single-spacing omitted).) In particular, Plaintiff maintains that, although "the ALJ appear[ed] to find the opinion evidence [from Plaintiff's orthopedic providers located in Exhibit 10F of the administrative transcript] consistent and well-supported" (id. (citing Tr. 27)), Exhibit 10F contains "multiple opinions from two different orthopedic providers, Dr. [Richard Andrew] Collins and Dr. [Jeffrey] Beane" (id. (referencing Tr. 960-1001)), and "the ALJ's vague reference to the opinion evidence in Exhibit 10F without identifying which provider's opinion she was referencing actually precludes meaningful review" (id. at 9-10 (referencing Tr. 27)). In Plaintiff's view, "[w]hile the ALJ's assessment is most consistent with Dr. Beane's opinion at [page] 962 [of the administrative transcript, the ALJ] ignore[d] relevant portions of [that] opinion[, including] . . . Dr. Beane's recommendations to avoid extension . . . [and] sustained flexion of the cervical spine." (Id. at 12-13 (emphasis added) (citing Tr. 27-28, 962).) According to Plaintiff, "the ALJ['s] fail[ure] to address and reconcile the probative evidence in the record that conflicts with her conclusions regarding [Plaintiff]'s RFC" warrants "[r]emand for

19

further consideration." (Id. at 15 (citing Social Security Ruling 96-8p, Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims, 1996 WL 374184, at *7 (July 2, 1996) ("SSR 96-8p")).) Those contentions miss the mark.

For benefits applications filed on or after March 27, 2017 (such as Plaintiff's (see Tr. 213-14)), the SSA has enacted substantial revisions to the regulations governing the evaluation of opinion evidence. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Under the new regulations, ALJs need not assign an evidentiary weight to medical opinions and prior administrative medical findings or accord special deference to treating source opinions. See 20 C.F.R. § 404.1520c(a) (providing that ALJs "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources"). [6] Instead, an ALJ must determine and

---

[6] The new regulations define a "medical opinion" as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the abilities to perform the physical, mental, or other demands of work activity or to adapt to environmental conditions. 20 C.F.R. § 404.1513(a)(2). Those regulations also define a "prior administrative medical finding" as a "finding, other than the ultimate determination about whether [a claimant is] disabled, about a medical issue made by [the SSA's] Federal and State agency medical and psychological consultants at a prior level of review." 20 C.F.R. § 404.1513(a)(5).

20

"articulate in [the] . . . decision how <u>persuasive</u> [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b) (emphasis added). Moreover, when a medical source provides more than one opinion or finding, the ALJ will evaluate the persuasiveness of such opinions or findings "together in a single analysis" and need not articulate how he or she considered those opinions or findings "individually." 20 C.F.R. § 404.1520c(b)(1).

In evaluating the persuasiveness of an opinion or finding, the SSA deems supportability and consistency "the most important factors" and thus the ALJ must address those two factors in evaluating the persuasiveness of an opinion or a finding. 20 C.F.R. § 404.1520c(b)(2).[7] The ALJ must only address the three other persuasiveness factors — the nature and extent of the medical source's relationship with the claimant and area of specialization, as well as the catch-all "other factors that tend to support or contradict" the opinion/finding, 20 C.F.R. § 404.1520c(c)(3)-(5) — when the ALJ finds two or more opinions or findings about the same issue "[e]qually persuasive" in terms of supportability and

---

[7] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(1). "Consistency" denotes "the extent to which the opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules, 82 Fed. Reg. at 5853; <u>see also</u> 20 C.F.R. § 404.1520c(c)(2).

consistency, 20 C.F.R. § 404.1520c(b)(3). Moreover, "[w]hen a medical source provides one or more medical opinions . . ., [the ALJ] will consider those medical opinions . . . from that medical source <u>together</u>." 20 C.F.R. § 404.1520c(a) (emphasis added).

Plaintiff began treatment with Dr. Collins (and his Physician's Assistant Bryson Stilwell ("PA Stilwell")) in April 2018, following an on-the-job motor vehicle accident on January 27, 2018, resulting in injury to her right shoulder covered by Workers' Compensation. (<u>See</u> Tr. 994-95.) Following right shoulder surgery in August, 2018 (<u>see</u> Tr. 999-1001), Dr. Collins and PA Stilwell issued the following series of work restrictions for Plaintiff's Workers' Compensation case:

- On November 12, 2018, Dr. Collins released Plaintiff from care, deemed her at maximum medical improvement, rated her right shoulder with a 15 percent permanent partial impairment, and opined that she could return to work with <u>regular duties</u>. (Tr. 986.);

- After Plaintiff returned to Dr. Collins in February 2019 with reports of "mild pain" (Tr. 977) rated at 2 out of 10 on the pain scale (<u>see</u> Tr. 976), Dr. Collins restricted Plaintiff to "<u>light duty with . . . no lifting over 10 pounds and no overhead activity</u>" (Tr. 978 (emphasis added)).

- In March 2019, PA Stilwell continued those <u>same restrictions</u>. (<u>See</u> Tr. 972.)

- In April 2019, Dr. Collins again released Plaintiff from care, reiterated his 15 percent permanent partial impairment rating of Plaintiff's right shoulder, and opined that she could "<u>work full duty</u> based on her right shoulder," while noting that Dr.

22

Beane continued to treat Plaintiff's "other problems." (Tr. 964 (emphasis added).)

After Plaintiff reported to Dr. Collins on February 11, 2019, that "her shoulder pain [had] improved," and that she thought her "pain c[ame] from her neck" (Tr. 977), Plaintiff saw Dr. Beane for the first time the next day (see Tr. 973-75), but he deferred any work status restrictions to Dr. Collins at that time (see Tr. 975). Dr. Beane thereafter offered the following recommendations and continued Dr. Collins's restrictions in place:

- In March 2019, Dr. Beane noted that he and Plaintiff "had discussed the concepts of positional neurapraxia of the cervical nerve roots," including "[t]o avoid extension of the cervical spine during activities of daily living such as that that occurs in the seated position while utilizing a computer or driving," "to avoid sustained overhead activity which extends the cervical spine," to maintain "appropriate sitting posture," to "[a]void[] sustained flexion," to engage in "isometric paracervical strengthening exercises and cervical stretching exercises to open up and distract the neuroforamen," to "[a]void[] a traction injury to the cervical nerve roots," and to "avoid[] overextending the arm and elevating the shoulder with lifting tasks." Dr. Beane further noted that he "[c]ontinue[d] . . . [Plaintiff's] current restrictions." (Tr. 970 (emphasis added).)

- In April 2019, Dr. Beane noted that Plaintiff "currently ha[d] light duty restrictions of no lifting over 10 [pounds] with the right arm" (Tr. 966 (emphasis added)), as well as stated that Plaintiff should "[c]ontinue [with] no lifting over 10 pounds or repetitive use of the right arm" (Tr. 967 (emphasis added)).

- In May 2019, Dr. Beane again observed that Plaintiff "was placed on restriction of no lifting over 10[ pounds] with [her] right arm" (Tr. 961

23

(emphasis added)), reiterated his "discuss[ion] with Plaintiff about "the concepts of positional neurapraxia of the cervical nerve roots" (Tr. 962), and stated that Plaintiff should "[c]ontinue with her current restrictions [of] <u>no lifting over 10 pounds with the right arm</u>" (<u>id.</u> (emphasis added)).

The ALJ evaluated the opinions of Drs. Collins and Beane as follows:

> The [ALJ] notes that [Plaintiff]'s <u>provider</u> at EmergeOrtho initially restricted her to no lifting over ten pounds which is not inconsistent with a limitation to light exertion which includes occasional lifting of twenty pounds with both arms. [Plaintiff] was also restricted to no overhead activity before being cleared to return to full duty with no overextending of her arm and no elevated [sic] her shoulder with lifting tasks. This is accounted for in [Plaintiff's RFC] by limiting her to occasional reaching and occasional lifting to shoulder level with the right upper extremity. Overall, the limitations assessed by [Plaintiff]'s <u>orthopedist</u> at EmergeOrtho are well-supported by the documented examination findings in the records from that facility and are consistent with the cervical imaging studies and the subsequent examination findings of decreased neck and right shoulder range of motion.

(Tr. 27-28 (emphasis added) (internal parenthetical citation omitted).) Plaintiff challenges that analysis on two grounds, neither of which establishes a basis for remand.

Plaintiff first asserts that "the ALJ's vague reference to the opinion evidence in Exhibit 10F without identifying which provider's opinion she was referencing actually precludes meaningful review." (Docket Entry 14 at 9-10 (referencing Tr. 27).) In addition, Plaintiff observes that "the ALJ appear[ed] to conflate Dr. Collins' opinion - which was specifically limited to

24

only [Plaintiff's] right shoulder impingement – with Dr. Beane's opinions even though Dr. Collins' [sic] specifically noted in April 2019 that the right shoulder was not [Plaintiff]'s only problem and that Dr. Beane was providing care and recommendations for th[o]se additional problems."  (Id. at 13 (referencing Tr. 964).)

The ALJ's use of the singular words "provider" and "orthopedist" in his above-quoted analysis (Tr. 27) lends some support to the notion that the ALJ failed to realize that three different providers at the same orthopedic practice treated Plaintiff.  That apparent oversight by the ALJ, however, does not preclude meaningful review by this Court because, as the chronology of opinions from Dr. Collins, PA Stilwell, and Dr. Beane discussed above makes clear, Dr. Collins issued the restrictions at issue in this case (see Tr. 978), and PA Stilwell and Dr. Beane just "continued" them (see Tr. 961 (Dr. Beane's observation that Plaintiff "was placed on restriction of no lifting over 10[ pounds] with [her] right arm" (emphasis added)), 962 (Dr. Beane's remark that Plaintiff should "[c]ontinue with her current restrictions" (emphasis added)), 966 (Dr. Beane's notation that Plaintiff "currently had light duty restrictions" (emphasis added)), 967 (Dr. Beane's reported plan that Plaintiff should "[c]ontinue [with] no lifting over 10 pounds or repetitive use of the right arm" (emphasis added)), 970 (Dr. Beane's notation that Plaintiff "currently ha[d] light duty restrictions," and that he

25

"[c]ontinue[d] . . . [Plaintiff's] current restrictions (emphasis added)), 972 (PA Stilwell's statement that Plaintiff "[c]ontinue modified work duties" (emphasis added)), 975 (Dr. Beane's deferral of any work status restrictions to Dr. Collins)).

Furthermore, Dr. Collins's restrictions, as well as Dr. Beane's and PA Stilwell's continuation of those restrictions, limited Plaintiff to no more than 10 pounds of lifting with her dominant right upper extremity (see Tr. 978), and Plaintiff does not argue that the ALJ's light-exertion RFC failed to accommodate that restriction (see Docket Entries 14, 19). Moreover, although the phrasing of the reaching component of Dr. Collins's restrictions varied over time (compare Tr. 978 (Dr. Collins's restriction to "no overhead activity" before later releasing Plaintiff to full duty (see Tr. 964) (emphasis added)), with Tr. 967 (Dr. Beane's rephrasing of Dr. Collins's reaching restriction as "no . . . repetitive use of the right arm" (emphasis added)), and 962 (Dr. Beane's reiteration of Dr. Collins's 10-pound lifting restriction on right arm without including reaching limitation)), Plaintiff similarly makes no argument that the ALJ's limitation to occasional reaching and lifting to shoulder level with the right upper extremity in the RFC (see Tr. 22) failed to capture those reaching restrictions (see Docket Entries 14, 19).

Second, Plaintiff argues that, "[w]hile the ALJ's assessment is most consistent with Dr. Beane's opinion at [page] 962 [of the

26

administrative transcript, the ALJ] ignore[d] relevant portions of [that] opinion[, including] . . . Dr. Beane's <u>recommendations</u> to avoid extension . . . [and] sustained flexion of the cervical spine." (Docket Entry 14 at 12-13 (emphasis added) (citing Tr. 27-28, 962).)  That argument fails, because Dr. Beane's discussion with Plaintiff of such matters as avoiding cervical extension while engaged in daily activities, avoiding sustained cervical flexion and overhead activity, maintaining good posture, performing certain cervical exercises, and avoiding arm overextension and shoulder elevation (<u>see</u> Tr. 962, 970) does not constitute the issuance of <u>medical opinions</u>, but rather <u>treatment recommendations</u>.[8]  "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of [the plaintiff's] impairment(s), including [the plaintiff's] symptoms, diagnosis and prognosis, what [the plaintiff] can still do despite impairment(s), and [the plaintiff's] physical or mental <u>restrictions</u>."  20 C.F.R. § 404.1527(a)(1) (emphasis added).  In contrast, a <u>recommendation</u> that a patient undertake certain

---

[8] To the extent the ALJ treated Dr. Beane's recommendation that Plaintiff avoid overextension of her arm and shoulder elevation when performing lifting tasks as a medical opinion (<u>see</u> Tr. 27-28), any such error by the ALJ remains harmless, <u>see generally</u> <u>Fisher v. Bowen</u>, 869 F.2d 1055, 1057 (7th Cir. 1989) (observing that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"), as the ALJ "accounted" for that recommendation "in the [Plaintiff's RFC] by limiting her to occasional reaching and occasional lifting to shoulder level with the right upper extremity" (Tr. 27).

ameliorative measures to lessen pain and/or increase functionality does not equate to a physical <u>restriction</u> or a judgment about what that patient can still do despite his or her impairments. <u>See Welch v. Colvin</u>, 566 F. App'x 691, 693–94 (10th Cir. 2014) (finding that "none of the physicians [the plaintiff] identifie[d] provided medical opinions about her that, given her impairments, the ALJ was required to weigh[, but r]ather, each physician simply diagnosed [the plaintiff's] impairments and in some cases recommended treatment for them"); <u>Cruz v. Commissioner of Soc. Sec. Admin.</u>, No. 19CV4460, 2020 WL 3567033, at *2 (D. Ariz. July 1, 2020) (unpublished) (holding that ALJ had no obligation "to address [doctor's] statement as a medical opinion," because doctor "merely recommended that [the p]laintiff elevate her legs when sitting" and "did not state it was necessary for work" (internal quotation marks and brackets omitted)), <u>aff'd sub nom.</u>, <u>Cruz v. Kijakazi</u>, No. 20-16651, 2021 WL 5357231 (9th Cir. Nov. 17, 2021) (unpublished); <u>Valentine v. Commissioner of Soc. Sec. Admin.</u>, No. 1:18CV1887, 2019 WL 4395177, at *11 (N.D. Ohio July 23, 2019) (unpublished) (finding doctor's "recommend[ation] . . . that [the plaintiff] elevate his legs" failed to qualify as "medical opinion[] that [the plaintiff]'s varicose veins caused work-related functional limitations" (internal quotation marks omitted)), <u>recommendation adopted</u>, 2019 WL 4394168 (N.D. Ohio Sept. 13, 2019) (unpublished); <u>Inscho v. Commissioner of Soc. Sec.</u>, No. 17CV114, 2018 WL 4184340,

28

at *1 n.2 (W.D. Pa. Aug. 31, 2018) (unpublished) (deeming the plaintiff's "portray[al of consultative psychological examiner]'s observations as an opinion as to [the p]laintiff's work-related limitations [] simply inaccurate," because "the section of the evaluation labeled 'Recommendations,' the section that came closest to offering opinions, set forth actions and situations from which [the p]laintiff would benefit, not things that she could or could not do").

In sum, Plaintiff has failed to demonstrate that the ALJ prejudicially erred in her evaluation of the opinions from Plaintiff's orthopedic providers.

### III. CONCLUSION

Plaintiff has established an error warranting remand regarding VE testimony.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be vacated, and that this matter be remanded under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings, to include obtaining the testimony of a VE to identify and resolve any apparent conflicts between the VE's testimony and the DOT in accordance with SSR 00-4p and Pearson. As a result, Plaintiff's Motion for Summary Judgment (Docket Entry 13) should be granted in part (i.e., to the extent it

29

request remand), and Defendant's Motion for Judgment on the Pleadings (Docket Entry 17) should be denied.

_____/s/ L. Patrick Auld_____
**L. Patrick Auld**
**United States Magistrate Judge**

February 24, 2023